JOHN B. KUNZ, as Administrator, etc., Appellant, v. THE CITY OF TROY, Respondent.

The duty of keeping the streets of the city of Troy in repair and free from obstructions is, under its charter, a corporate duty. (§ 15, chap. 131, Laws of 1816; § 2, tit. 2, chap. 598, Laws of 1870.)

The city was not relieved from the duty so imposed by the creation of the board of police commissioners under and by the act of 1870 (chap. 520, Laws of 1870); even assuming that board as so constituted is an independent body, not subject to the control of the municipal corporation. The powers conferred and duties enjoined upon the police department by said act in respect to the streets are auxiliary only, not exclusive.

To charge a city corporation with negligence, in not removing an obstruction unlawfully placed in one of its streets by a third person, it is not necessary to show express notice; if it appears from the circumstances that the municipal authorities charged with the care of its public streets ought to have known of the obstruction and to have caused its removal, and, if ignorant, that their ignorance resulted from the omission of the duty of inspection, and of the degree of diligence which might reasonably be expected, the city is equally chargeable as if express notice had been actually given.

It seems that where the question of negligence in not removing such an obstruction depends upon implied notice, in determining what is a reasonable time from which notice is to be inferred, weight should be given to the consideration that municipal authorities cannot be expected to act with the promptness and celerity of individuals in conducting their private affairs.

In an action for negligence causing injury to a child, so young as to be *non sui juris*, contributory negligence may not be imputed to the child; and so it is not sufficient to defeat a recovery to show that the injury would not have happened without the concurring act of the child, although if committed by an adult it would be a negligent one. There must also be concurring negligence on the part of the parents or guardian.

It is not *per se* negligence on the part of a parent or guardian to permit a child *non sui juris* to play in the street.

In an action against the city of Troy to recover damages for alleged negligence causing the death, of G., plaintiff's intestate, it appeared that one McL. placed a large heavy counter on the sidewalk of a frequented street in a busy part of the city, tilted in such a manner as to be easily thrown down. Four days afterward, G., a child between five and six years, was playing around the counter with two other children of about the same age, when the counter was thrown down by the children running against or jumping upon it, it fell upon G., inflicting injuries which caused his death. There was evidence tending to show that G's father went into a store near by, leaving G. at the door, cautioning him not to go far away; the father returned in from two to five minutes, and during that time the accident happened. By a city ordinance the placing of obstructions on the streets, except when done under a license, is prohibited, and certain of the city officials named are author ized to order any obstructions to be removed. *Held*, that the court erred in directing a non-suit.

*Kunz* v. *City of Troy* (36 Hun, 615) reversed.

(Argued January 19, 1887; decided February 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 17, 1885, which affirmed a judgment in favor of defendant, entered upon an order non-suiting the plaintiff on trial. (Reported below 36 Hun, 615.)

This action was brought to recover damages for alleged negligence causing the death of George W. Kunz, plaintiff's intestate.

The deceased was at the time of his death between five and six years of age. He had been accustomed to accompany his father, the plaintiff, who was in the employ of a man having a store on Federal street in the city of Troy, to his place of business; near to this store was a saloon kept by one McLaughlin. On Tuesday, April 19, 1881, McLaughlin

removed from the saloon certain bar fixtures which were placed upon the sidewalk, among them a sideboard which was placed back against the wall of the building and in front of this, and tilted back against it, a bar counter eighteen to twenty feet long, and from two and one-half to three feet high with a heavy top of black walnut about thirty inches wide; the counter at the bottom was about two feet wide. On Saturday, April twenty-third, plaintiff was standing in the door of his place of business, with his son near him on the sidewalk, when some person requested him to change a bill, he stepped back into the store for that purpose, telling his son not to go far away. He was absent from two to five minutes. On his return he found his son seriously injured, and from the effects of the injury he died. The evidence tended to show that the boy was playing around the counter with two other children of about his own age, when in consequence of their running against or jumping upon it, the counter was thrown down falling upon the deceased and inflicting the injuries.

Further facts appear in the opinion.

*Edgar L. Fursman* for appellant. The defendant was bound to the exercise of a reasonably active vigilance to ascertain the existence of the obstruction upon the sidewalk and cause its removal. (*Todd* v. *City of Troy*, 61 N. Y. 506, 509.) The plaintiff is entitled to the most favorable inferences deducible from the evidence, and all contested questions of fact are to be deemed established in his favor. (*Rehberg* v. *Mayor, etc.*, 91 N. Y. 137, 141.) The very fact of the obstruction being placed in the street by a private person, without permission of the city authorities, and in direct violation of a city ordinance, called upon the city authorities to take notice of its existence and situation upon the sidewalk and of the dangerous manner in which it stood, and to cause its removal. (91 N. Y. 137; *Hume* v. *Mayor, etc.*, 74 id. 264.) The plaintiff's intestate was not negligent. It is hardly possible to impute negligence to a child of five years. (*McGarry* v. *Loomis*, 65 N. Y. 104–108; *McGuire* v.

*Spence*, 91 id. 303; *R. R. Co.* v *Stout*, 17 Wall, 657; *Pittsburg, etc., R. Co.* v *Caldwell*, 74 Penn. 421; *Meibus* v. *Dodge*, 38 Wis. 300; 28 Am. R. 6–8; *Thurber* v. *H. B. M. & F. R. R. Co.*, 60 N. Y. 326; *Ihl* v. *Forty-second St. R. R. Co.*, 47 id. 317; *Mangam* v. *Brooklyn R. R. Co.*, 38 id. 455.) There was no negligence on the part of the father imputable to the child. (*Mullaney* v. *Spence*, 15 Abb. [N. S.] 319; *Cosgrove* v. *Ogden*, 49 N. Y. 255; *Fetter* v. *N. Y. & H. R. R. Co.*, 2 Abb. App. Dec. 458; *Powell* v. *Powell*, 74 N. Y. 71; *Hart* v. *Bridge Co.*, 80 id. 622.) The nonsuit was erroneous unless it can be said that the defendant was not liable in any aspect of the case. (36 Hun, 315; *Hartfield* v. *Roper*, 21 Wend. 615.) In cases of this character there is no difference, so far as liability is concerned, between active negligence and passive negligence. (*Weed* v. *Village of Ballston Spa*, 76 N. Y. 329, 336; *Birge* v. *Gardiner*, 19 Conn. 506; *Lynch* v. *Nurdin*, 41 Eng. C. L. 422; *Lane* v. *Atlantic Works*, 111 Mass. 136, 139, 140; *Norristown* v. *Moyer*, 67 Penn. 355; *Champlin* v. *Penn Yan*, 34 Hun, 33; *Hume* v. *Mayor, etc.*, 74 N. Y. 264, 270; *Rehberg* v. *Mayor, etc.*, 91 id. 137.) It is of no consequence that the city authorities, if they knew of the existence of the obstruction, did not think it dangerous if it was in fact dangerous; that was a question of fact for the jury. (*Goodfellow* v. *Mayor, etc.*, 100 N. Y. 15, 18.)

*R. A. Parmenter* for respondent. There was not sufficient evidence for the jury to predicate negligence on the part of the defendant. (*McKay* v. *Buffalo*, 9 Hun, 401; Dillon on Mun. Cor., § 773; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392.

ANDREWS, J. We think the case should have been submitted to the jury, The duty to keep the streets in the city of Troy in repair and free from obstructions is a corporate duty resting upon the municipality, springing from the acceptance by the city of its charter and the power of the municipal legislative body to protect the streets against nuisances, to the injury of the public right or of individuals lawfully using them.

The charter (Laws of 1816, chap. 131, § 15), makes the common council commissioners of highways within the city, and it is empowered to pass ordinances to regulate and keep in repair the streets in the city and to prevent incumbrances thereon, and it is made the duty of the mayor to cause the laws and ordinances of the city to be duly executed (Laws of 1870, chap. 598, tit. 2, § 2). By an ordinance passed in 1859, the placing of any obstructions upon any of the streets or sidewalks, interfering with the free use thereof, except when done under a license for the erection or repairing of buildings, is prohibited, and by another ordinance, passed the same year, the mayor, members of the common council and other officers mentioned were authorized to order any obstructions placed in the streets to be removed. The city was not relieved from the duty under the charter to keep the streets free from obstructions by the creation of the board of police commissioners, first established by chapter 520, of the Laws of 1870, and the duty imposed upon the police force by the twenty-third section of the act to remove nuisances from the public streets, assuming, as is claimed, that the board of police commissioners, as constituted, is an independent body, not subject to the control of the municipal corporation, or amenable to its jurisdiction. It is sufficient for the purposes of this case to say that the powers conferred and the duties enjoined upon the police department by the act of 1870, in respect to the streets, are auxiliary only, and not exclusive. (*Conrad* v. *Village of Ithaca*, 16 N. Y. 158; *Todd* v. *City of Troy*, 61 id. 506.) The negligence, if any, on the part of the city in the present case, does not arise from any affirmative act, but from an alleged omission to exercise proper care and supervision, and permitting the counter, unlawfully placed on the sidewalk by McLaughlin, to remain there after notice of the obstruction. The death of the plaintiff's intestate, caused by the falling of the counter, demonstrates that it was a dangerous obstruction on the sidewalk. It is quite probable that it would not have fallen without the agency and contact of the children who were playing about it. But such an interference might

reasonably have been anticipated, and to place a large object, as the counter was, on a sidewalk on a frequented street, tilted in such a manner that it could be thrown down by two or three children of five or six years of age running against or climbing upon it, was plainly an unlawful and negligent act.

The city, however, was not responsible for the original wrong. Its culpability, if any, as we have said, consists in not interfering to cause the removal of the obstruction after due notice of its existence. It is not claimed that there was any actual notice of the obstruction to the mayor, or the legislative body, or any city official, unless notice to patrolmen was notice to the city. It is denied that notice to members of the police force was notice to the city, for the reason before indicated. But aside from the fact that the obstruction was observed by patrolmen, the counter was placed on the sidewalk on Tuesday, and remained there until Saturday, the day of the accident, and it is not claimed that meanwhile any measures were taken by the authorities to have the obstruction removed. This lapse of time, together with the fact that Federal street was in a busy and frequented part of the city, made it, we think, under the authorities, a question for the jury, whether the city authorities, charged with the care of the public streets, ought to have known of the obstruction and to have caused its removal before the accident. If the city authorities had no actual notice, nevertheless, if their ignorance was owing to an omission of the duty of inspection, and of the degree of diligence which might reasonably be expected under all the circumstances, the opportunity of knowledge stands, for the purposes of the case, as actual knowledge and the city is equally chargeable as if express notice had been actually proven. (*Weed* v. *Village of Ballston Spa*, 76 N. Y. 329, and cases cited.) It is obvious that this rule, unless carefully administered by courts and juries, may impose unjustifiable burdens upon municipal corporations. The rule requiring care on the part of municipalities in protecting and keeping safe the public streets, and which subjects such corporations to the consequences of a disregard of their statutory duties in

this respect, is wholesome and founded, we think, in just principles. The danger is that courts and juries may not sufficiently take into account, in determining the question of negligence, the extent of roadways in a city, under the supervision of the city authorities, the unavoidable delay often attending the action of municipal authorities, and financial and other embarrassments. Where the question of negligence, in not removing an obstruction unlawfully placed in the street by third persons, depends upon implied notice, what is a reasonable time from which notice is to be inferred, must be determined upon all the circumstances, giving weight to the consideration that municipal authorities with their multiplied duties cannot be expected to act with the promptness and celerity of individuals in conducting their private affairs.

The remaining question relates to the alleged negligence of the plaintiff's intestate. The intestate was a child between five and six years of age. We understand the rule to be that in an action for an injury founded on negligence, contributory personal negligence cannot be attributed to a child of very tender years, who from his age cannot be supposed capable of exercising judgment or discretion, although the injury would not have happened without his concurring act, and although that act if committed by an adult would be a negligent one. In such a case a defendant whose negligence was a constituent element of the transaction, and without which the injury would not have happened, is legally responsible, notwithstanding the negligence of the infant, unless it appears that the parents or guardians were negligent in permitting the child to be brought into the situation which subjected it to the hazard and resulting injury. There is an obligation in general upon all persons to conduct themselves with prudence and care, and not recklessly, or even incautiously expose themselves to danger, even from the negligent acts of others. But the law exacts no impossibility. It does not require an infant before reaching the age of discretion to exercise discretion. But it imposes upon

parents and guardians the duty of using reasonable care to protect those incapable of protecting themselves, and if they fail to exercise such care, and the infant is thereby brought into danger and suffers injury from the negligent act of another, their negligence is deemed the negligence of the infant. In *Hartfield* v. *Roper* (21 Wend. 615), it was held as matter of fact that there was no negligence on the part of the defendant, and that that there was negligence on the part of the parents in permitting a child of two and a half years of age to be in the roadway. The new trial in that case was properly granted on either ground. There are some remarks in the opinion which, disconnected with the context, may be construed as sustaining the proposition that although there was no negligence on the part of the parents, the plaintiff could not maintain the action if the conduct of the child contributed to the injury. But we understand the present doctrine on this question to be that it is not sufficient to defeat a recovery for an injury to a child, not *sui juris*, caused by the negligence of a defendant, that the act of the child was one which in an adult would be deemed a negligent one contributing to the injury. There must also be concurring negligence on the part of the parents or guardians. (*Ihl* v. *Forty-second St. R. R. Co.*, 47 N. Y. 317; *McGarry* v. *Loomis*, 63 id. 104.) In the absence of negligence on the part of the parents or guardian, the doctrine of contributory negligence has, in such a case, no application.

In this case the child, in playing about the counter, was indulging a natural instinct in amusing himself and was not guilty of legal negligence, "although he contributed to the mischief by his own act." (Lord DENMAN in *Lynch* v. *Nurdin*, 1 Adolph & El. [N. S.] 29.) The law does not define when a child becomes *sui juris*. If there was any question whether the plaintiff's intestate had sufficient discretion to understand the danger of the situation, it should have been left to the jury, with proper instructions as to the degree of care exacted of a child of tender years, under the circumstances. (*Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455; *McGovern* v. *N. Y.*

*C. & H. R. R. R. Co.*, 67 id. 418; *Byrne* v. *Same*, 83 id. 620; *Dowling* v. *Same*, 90 id. 670; *R. R. Co.* v. *Stout*, 17 Wall. 657.) It is insisted, however, that the father of the intestate was chargeable with negligence in permitting the child to be on the sidewalk unattended. It has been held that it is not *per se* wrongful or negligent to permit children to play in the street. (*McGarry* v. *Loomis, supra; McGuire* v. *Spence*, 91 N. Y. 303.) It may, or may not, be negligence, depending upon circumstances. It was, we think, for the jury to determine whether the father of the intestate was guilty of negligence. The plaintiff is entitled to the most favorable inferences deducible from the evidence, and in reviewing the nonsuit all contested questions of fact are to be deemed established in his favor. The jury would have been entitled to have found from the evidence that the father left the child at the door of the store to go into the store to make change, cautioning the boy not to go far away, and on his return, from two to five minutes later, the accident had happened. It would be, we think, too strict a rule to impute negligence to the father as matter of law, under such circumstances. (See *Cosgrove* v. *Ogden*, 49 N. Y. 255.)

We think the court erred in directing a nonsuit, and that the judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.